JUSTIN LAWRENCE, individually
and on behalf of all others similarly
situated,

        Plaintiff,

v.

FPA MULTIFAMILY, LLC,

        Defendant.

_____/

CASE NO.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## **CLASS ACTION COMPLAINT**

1.    Defendant FPA Multifamily, LLC owns, manages and operates private student housing communities at or near colleges and universities throughout Florida, including The Social 2700 Student Spaces in Tallahassee, Florida, near Tallahassee Community College, where Plaintiff, Justin Lawrence, leased an apartment. The core offering of these apartments is the preferred student housing community including offering a variety of educational, recreational, and social amenities including an outdoor pool, a jacuzzi, an on-site fitness center complete with a weight room and cardio room, TV lounge, community room, a twenty-four hour computer lab with iMacs, PCs and free printing.

2.    As a result of the COVID-19 pandemic, universities throughout Florida and the nation have ordered university campuses be vacated to preserve the safety of the students and the public. At university-run facilities, students have been asked to evacuate dormitories similar in social layout to the facilities operated by the Defendant, which were recognized as unsafe due to the elevated risk of disease transmission inherent to high-density housing with extensive shared common areas. Furthermore, these universities, recognizing that it would be inequitable and

improper to charge students for housing that became unsafe to occupy, have been refunding housing money to students and their families.

3.      In contrast to the responsible actions of the universities and colleges, the Defendant, an investment company focusing on "student housing properties," is retaining all funds that their tenants have paid — and continues to demand payment from those who pay month-to-month — for room, board, and other services and amenities, even though the Defendant cannot safely provide them and the students have moved out. In fact, Defendant closed their own offices and vacated the premise and put a big sign on the door stating "Sorry" OFFICE IS CLOSED UNTIL FURTHER NOTICE.

4.      Plaintiff brings this action on his own behalf and on behalf of a class of persons who executed Lease Agreements with the Defendant but are not receiving the bargained-for services.

## **PARTIES**

5.      Plaintiff Justin Lawrence is a citizen of Florida, residing in Tampa. Mr. Lawrence signed a lease for a room at The Social 2700 Student Spaces Apartments for the Fall 2019-Summer 2020 academic school year.

6.      Defendants claim to be a real estate and property management company, headquartered in San Francisco, California with regional offices in Irvine, Atlanta, Chicago, Dallas, Denver, Minneapolis and Washington, D.C. Defendant and its subsidiaries advertise its apartments to students across the country as an alternative to on-campus living, while offering amenities specifically geared to college students, such as state-of-the-art fitness centers, swimming pools, 24-hour computer labs, and college and university involvement.[1]

---

[1]  https://www.thesocial2700.com/tallahassee/the-social-2700-student-spaces/amenities/

7.      The Social 2700 Student Spaces, acquired by Defendant, markets themselves as "your ticket to the best college experience!" [2] The Social 2700 Student Spaces is located in Tallahassee, Florida, serving attendees from Florida State University, Florida Agricultural and Mechanical University, and Tallahassee Community College.

8.      Plaintiff executed a Lease Agreement with Defendant on April 30, 2019, for one bedroom of a two-bedroom apartment and the use of the common areas including a kitchen and living room at The Social 2700 Student Spaces for the Fall 2019, Spring 2020, and Summer 2020 semester.  Plaintiff was eligible to move into the apartment on August 20, 2019.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Class are in excess of $5,000,000, exclusive of interest and costs, and most members of the proposed Class are citizens of the state of Florida.

10.      This Court has general jurisdiction over Defendant, which conducts substantial business within Florida, and thus has significant, continuous, and pervasive contacts with the State.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the challenged fee practices have been committed in this District, Plaintiff suffered the alleged harm in this District and Plaintiff resides in this District.

---

[2] https://www.thesocial2700.com/

## FACTS COMMON TO THE CLASS

**A.      Defendant Advertises and Sells Student Housing to College Students.**

12.      Student housing is in high demand at the Tallahassee Community College and nearby colleges. Students may choose to live in college-owned dormitories or private off-campus apartments. The Social 2700 Student Spaces, owned by Defendant, offers a third option — a "preferred student living community in Tallahassee, Florida, serving attendees of the Tallahassee Community College, Florida Agricultural and Mechanical University and Florida State University."

13.      Defendant advertises its preferred student living community to its target demographic — college students — and touts amenities specifically geared to them, such as outdoor pool, jacuzzi, on-site fitness center with a weight room and cardio room, TV lounge, community room, a twenty-four-hour computer lab with iMacs and PCs and free printing.

**B.      Allegations Regarding Plaintiff Justin Lawrence**

14.      Justin Lawrence is a student at Tallahassee Community College. Plaintiff evaluated the available housing options and selected The Social 2700 Student Spaces based largely on its student housing amenities.

15.      Plaintiff Justin Lawrence entered into his Lease Agreement with the understanding he would be able to enjoy the amenities including the common areas described above.

16.      Upon signing, Plaintiff paid a $99 application fee and a $100 administrative fee, and he continues to pay each month $492 for room and board and for some utilities.

17.      Plaintiff Justin Lawrence returned home in March 2020 after being directed by Tallahassee Community College, in concert with Florida State University, Florida A&M University, the Florida Governor and the President of the United States.

18.     Defendant refuses to return pro-rated monies paid for the month of March and the full month of April although this money was collected for services Defendant did not and could not perform.

19.     Plaintiff has always paid his monthly installments of $492.00. His contract is for Fall 2019, Spring 2020, and Summer 2020 and he paid on time every month.

20.     As a result of the COVID-19 pandemic, students were forced to evacuate the premises in March 2020.

21.     Plaintiff paid rent for the months of March and April 2020 because he was worried and scared although Plaintiff does not owe these debts.

22.     On March 31, 2020, The Social 2700 Student Services sent an email to all its residents entitled "Concerned About Rent?" because so many of the residents asked for assistance. [See Exhibit A]

23.      Defendant falsely claimed in the March 31, 2020 letter that everyone "earning less than $75,000 will receive $1200."

24.     When Plaintiff inquired as to the ability to terminate his lease, the Defendant insisted on the rent being paid, although the services Plaintiff contracted for were not and could not be provided safely. Plaintiff was told the only way he could get out of the lease was to find someone to take over his lease, and that the Defendant must approve of that person, in addition to paying a $300 lease termination fee.

25.     Defendant feigns concern over the plight COVID-19 and at the same time is haranguing and harassing Plaintiff concerning a debt that he does not owe for services Defendant is not and cannot provide. On May 1, 2020, Plaintiff was sent a debt collection correspondence attempting to collect rent although Plaintiff did not owe such. On May 7, 20220 Plaintiff received

a phone call telling Plaintiff that he needed to send the Defendant money for the rent.  On May 12, 2020, Plaintiff was sent an email advising him that he had a balance due.

26.     Defendant refuses to return monies paid for March (partial) and April 2020, although this money was collected for services Defendant did not and could not perform.

**C.     University Campuses Shut Down in Response to the COVID-19 Pandemic, and Defendant Cannot Provide the Bargained-For Services.**

27.     On March 9, 2020 Florida Governor Ron DeSantis issued Executive Order 20-52 declaring a state of emergency for the entire state of Florida a result of COVID-19.

28.     On March 11, 2020, Tallahassee Community College in concert with Florida State University and Florida A&M University, responded to COVID-19, by closing the campuses for Spring Break beginning March 16, 2020, with students to return on March 23, 2020 to attend class on-line for a period of at least two weeks.

29.     On March 13, 2020, President Donald Trump issued a Proclamation Declaring a National Emergency based upon the COVID-19 outbreak.

30.     On March 16, 2020, President Trump and the Center for Disease Control and Prevention ("CDC") issued the "15 days to slow the spread" guidance to slow the spread of the virus, advising individuals of social distancing measures such as avoiding gatherings of more than 10 people, and recommending restrictions for establishments tending to attract mass gatherings and congregations.

31.     Further, because all classes were moved online, there was no reason for students to remain near campus if they had other housing available to them.  **This is particularly so in the face of the dangers, risks, and fear associated with the pandemic.**

32.     The vast majority of students left campus to be with their families, and to avoid exposure to COVID-19, and they have stayed off campus to comply with directives from the schools, as well as local, state and federal governments.

33.     On March 24, 2020, Governor DeSantis issued Executive Order 20-83, directing the State Surgeon General and State Health Officer to issue a public health advisory urging the public to avoid all social or recreational gatherings of 10 or more people, stating "it is necessary and appropriate to take action to ensure that the spread of COVID-19 is slowed, and that residents and visitors in Florida remain safe and secure."

34.     On March 24, Plaintiff contacted The Social 2700 Student Spaces and asked if he had to pay his rent since the campus was shut down due to COVID-19.  He spoke with an individual working for the Defendant who informed him that he needed to pay his rent.  Plaintiff then asked if he could pay a lower amount since he would not have access to the amenities and Plaintiff was told no.

35.     On March 29, 2020 President Trump extended the guidelines to be in effect until April 30, 2020.

36.     On March 31, 2020 the President updated the guidelines renaming it "30 Days to Slow the Spread" and along with the Coronavirus Task Force urged Americans to adhere to the guidelines.

37.     On March 31, 2020, Plaintiff was informed that the lease was a binding contract and was given the option to "sublease" out his room with the stipulations that Plaintiff pays a $300 lease termination fee, a payment for the remaining balance of the account, and find a participant who can pass Defendant's screening process. The participant must be willing and able to take on a lease in the middle of an ongoing pandemic.

38.     Despite the fact that the dormitories cannot safely be occupied by the students, and the fact that the bargained-for amenities could not safely be provided, the Defendant has refused to return any portion of the rent and other fees it has collected.

39.     Defendant's demand for payment and refusal to provide partial refunds defies equity, common sense and is in diametrical opposition to the Governor and President's directives concerning the dangers of staying in their facilities.

40.     The purpose of the parties' lease agreement was to provide housing and services – including on-site leading resident life programs offering a variety of educational, recreational, and social activities.

41.     This purpose was frustrated when the campus closed, and students were ordered home no longer attending on-campus classes.

## CLASS ALLEGATIONS

42.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) as a representative of the following Class:

> All people who paid the costs of rent and fees for and on behalf of students residing in Defendant's Florida "campus living" complexes for the Spring and Summer 2020 semester who moved out prior to the completion of the semester because of school closures relating to COVID-19.

43.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues, as discovery and the orders of this Court warrant.

44.     Excluded from the Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of Defendant's immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendant has or had a controlling interest.

45.     Plaintiff is a member of the Class he seeks to represent.

46.     Defendant has thousands of customers that have paid room, rent and fees while schools were closed, and students ordered to return home. Accordingly, members of the Class are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

47.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, whether Defendant has refused to offer refunds and whether it has breached its contracts with its customers or otherwise acted unlawfully.

48.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was charged rental fees and suffered losses despite being ordered to leave campus and return home by school and government officials.

49.     Plaintiff is an adequate representative of the Class because Plaintiff's interest does not conflict with the interests of the Class members Plaintiff seeks to represent, Plaintiff has retained competent counsel experienced in prosecuting class actions, and Plaintiff intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

50.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases

the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication.

**COUNT I**
**RESCISSION**

51.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

52.     Plaintiff, as well as all other Class members, were in contractual privity with the Defendant as tenants of the Defendant's facilities. These contractual agreements involving the Class members and Defendant were evidenced in writing and signed by the parties.

53.     As noted above, the purpose of the contractual undertaking between the Class members (including Plaintiff) and Defendant was to provide a "preferred student living community" living arrangement to student Class members. The living space provided by this arrangement was bundled with a number of amenities and conveniences that particularly catered to students attending university campuses, such as, an exercise center, computer labs, and free parking so you can take public transportation to the colleges.

54.     There has been a clear "equitable breach" in this case that warrants rescission because issues of "impossibility of performance" and "frustration of purpose" have arisen.

55.     As to the "frustration of purpose", Plaintiff executed the contract with the Defendant with the understanding that Defendant was obligated to provide the student Plaintiffs

and other student Class members with benefits, to include, but is not limited to access to the outdoor pool, TV room, community room, fitness center, jacuzzi and 24 hour computer center with iMacs and PCs and free printing. Due to Defendant's failure to provide Plaintiff with said benefits Plaintiff was substantially frustrated as the purpose and benefits of the bargain were breached.

56.     As to "impossibility of performance," Defendant was obligated to provide the student Plaintiff and other student Class members with access to common areas, fitness center, technology center with computer stations, social activities, and other services. However, as a result of the COVID-19 pandemic, these common areas and services became both unsafe to provide and unsafe to use.

57.     To that end, it should be noted that the only private accommodation provided by Defendant, The Social 2700 Student Spaces, was a bedroom and bathroom in a shared two-bedroom apartment. Each living unit had common space shared amongst residents. As such, essential daily living and hygiene functions were necessarily performed in a shared common facility with other students that any individual student might not know well, thus presenting a great risk for COVID-19 infection.

58.     Indeed, it is noteworthy that very similar dorm facilities run by the universities were closed down and the students urged to leave because the living arrangements were unsafe to occupy. This was consistent with CDC guidelines which discouraged gatherings of more than 10 people and advised that stringent "social distancing" measures be taken to avoid transmission of COVID-19. However, Defendant, because of its own profits-over-people pecuniary interests, refused to acknowledge that the particular form of high-density housing arrangement that it provided was inconsistent with prudent safety measures.

59.     In addition to that, it was simply not possible for students to fully access common areas and amenities in a prudent manner.  Places such as the fitness center and computer stations would have required student Class members to group together beyond what was prudent.  Even the heavily used common hallways presented such a risk.

60.     For this reason, it was impossible for the Defendant to provide what was bargained for under the Class members' contracts.

61.     As to frustration of purpose, the student-style living arrangement was offered as part of a bundled package of amenities that were a fundamental part of Defendant's performance under the contract.  As noted above, Defendant's living facilities and common amenities were rendered unsafe to use as a result of the COVID-19 pandemic.  The provision of these living arrangements along with the coupled amenities were the fundamental purpose of the Class members' agreements and became frustrated by the fact that they could not be safely provided or used.

62.     Given that the University campuses were closed, and no campus activities were taking place because of the COVID-19 pandemic, this frustrated an essential purpose of the Class members' contracts with Defendant.  Indeed, the very purpose of the Class members' contracts with Defendant was to allow the student Class members to attend school on university campuses, which was of course is not possible due to the closure of the university campuses.

63.     Defendant has been provided with ample notice of the Class members' desire for rescission. Indeed, not only did the Plaintiffs provide individual notice, but, as noted above, so many Class members contacted Defendant that it engaged in mass communications with Class members to present its position that no rescission would be permitted. Additionally, the Defendant

was put on notice by the governor, the President and the Tallahassee Community College directives.

64.     This case is suitable for rescission because the parties can be equitably restored to their original position or, if that result would not be equitable, a balance of equities can otherwise be achieved.

65.      This count for rescission is pleaded in the alternative to any claim for legal relief. To the extent no remedy at law is available, rescission is appropriate.

<u>**COUNT II**</u>
**BREACH OF CONTRACT**

66.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-50 of this Complaint.

67.     The lease agreement provided that each Plaintiff had ". . . a non-exclusive license to use all driveways, walkways, hallways, landscaped areas, and other common areas of the Apartment Community (the "Common Areas"); such usage to be in common with other residents in the Apartment Community and their respective guests, invites, and licensees."

68.     The Defendants have breached the contract because they are unable to safely provide these services and amenities.

<u>**COUNT III**</u>
**BREACH OF IMPLIED CONVENANT OF GOOD FAITH AND FAIR DEALING**

69.     Plaintiff hereby incorporates by reference the allegations contained in 1-50 of this Complaint.

70.     Plaintiff bring this claim on his own behalf and on behalf of the proposed Class against Defendant.

71.     In performing its leases with Plaintiff and the Class members, Defendant has breached the implied covenant of good faith and fair dealing by:

a.     Unfairly and in bad faith asserting that remaining in shared space is a reasonable option for Plaintiff and proposed Class members.  Dormitories, whether on or off campus, are not designed to safely house students in the event of a pandemic, and, in order to stay safe, a vast majority of the students must move out in order to practice safe social distancing in accordance with CDC recommendations.

b.     Unfairly and in bad faith representing that its properties serve as a preferred student living community and provide residence life programs to compliment students' academics. However, once the schools have closed and the students it purports to serve have been forced to leave, the reality reveals itself that Defendant does not consider its provision of room and services to be tied whatsoever to the schools or to the students' academics, as it has failed to refund unearned payments for room and fees.

c.     Unfairly and in bad faith failing to refund any monies paid by the Plaintiff and proposed Class that remain unused as a result of the COVID-19 pandemic.

72.     As a result of Defendant's breach of the implied covenant of good faith and fair dealing as set forth above, Plaintiff and the proposed Class members have been damaged.

## COUNT IV
## UNJUST ENRICHMENT

73.     Plaintiff hereby incorporates by reference the allegations contained in 1-50 of this Complaint.

74.     Plaintiff brings this on his own behalf and on behalf of the proposed Class against Defendant.

75.     Plaintiff and members of the Class conferred benefits on Defendant by paying room and fees, despite the closing of colleges and universities and attendant recommendations for social distancing and returning home.

76.     Defendant has knowledge of such benefits.

77.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' payments. Retention of those moneys under these circumstances is unjust and inequitable because Defendant is charging its customers full price of a semester's worth of room and fees of which Plaintiff and Class members cannot reasonably avail themselves.

78.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

## COUNT V
## CONVERSION

79.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 - 50 of this Complaint.

80.     Plaintiff brings this claim on his own behalf and on behalf of the proposed Class against Defendant.

81.     Defendant deprived Plaintiff and the other members of the Class of the value they paid for themselves (or the students on whose behalf they paid for) of their right to the services and amenities provided in the lease agreement.

82.     Plaintiff and members of the Class had a right to a refund of their room and fees while the schools The Social 2700 Student Spaces catered to were and remain closed; Defendant intentionally refused issuance of any refund or credit after the schools were closed; Plaintiff and

Class members were harmed through Defendant's unlawful retention of room and fees; Defendant's conduct was a substantial factor in causing Plaintiff and Class members' harm.

83.     Plaintiff and members of the Class are entitled to the return of the prorated, unused amounts paid for room and fees through the end of the semester.

## COUNT VI
## MONEY HAD AND RECEIVED

84.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-50 of this Complaint.

85.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

86.     Defendant received money in the form of room and fee payments that was intended to be used for the benefit of Plaintiff and the Class; however, those fees were not used for the benefit of Plaintiff and the Class, and Defendant has not given back or refunded the wrongfully obtained money and fees to Plaintiff and the Class.

## COUNT VII
## FLORIDA CONSUMER COLLECTION PRACTICES ACT

87.     Plaintiff hereby incorporate by reference the allegations contained in paragraphs 1 – 50 of this Complaint.

88.     Plaintiff brings this claim on his own behalf and on behalf of the proposed Class Members against Defendant.

89.     At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

90.     Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be

expected to harass the debtor or any member of her or his family or willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

91.     Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate, or to assert the existence of some legal right when Defendant knows that right does not exist.

92.     Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.      For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class, and Plaintiff's attorneys as Class Counsel to represent the Class members;

b.      For an Order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c.      For an Order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.      For statutory, compensatory and punitive damages in amounts to be determined;

e.      For prejudgment interest on all amounts awarded;

f.      For an Order of restitution and all other forms of equitable monetary relief;

g.      For injunctive relief as pleaded or as the Court may deem proper;

h.      For a declaration that the housing contract and agreements between Defendant and Plaintiff and the Class are unenforceable; and

i.      For an Order awarding Plaintiff and the Class their reasonable attorneys' fees, litigation expenses, and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

*/s/ Heather H. Jones*_____
Heather H. Jones, Esquire
Florida Bar No. 0118974
William "Billy" Peerce Howard, Esquire
Florida Bar No. 0103330
Amanda J. Allen, Esquire
Florida Bar No. 0098228
THE CONSUMER PROTECTION FIRM
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Heather@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com

***Attorneys for Plaintiff***