UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUSTIN LAWRENCE,
individually and on behalf
of all others similarly
situated,

    Plaintiff,

v.                                Case No. 8:20-cv-1517-VMC-JSS

FPA VILLA DEL LAGO, LLC,
and TRINITY PROPERTY
CONSULTANTS, LLC,

    Defendants.
_____/

**<u>ORDER</u>**

    This matter comes before the Court upon consideration of Defendants FPA Villa Del Lago, LLC, and Trinity Property Consultants, LLC's Motion for Summary Judgment (Doc. # 108), filed on June 4, 2021. (Doc. # 108). Plaintiff Justin Lawrence responded on July 1, 2021, and Defendants replied on July 14, 2021. (Doc. # 114; Doc. # 115). Also pending before the Court is Plaintiff's Motion for Class Certification, filed on May 5, 2021. (Doc. # 90). Defendants responded on June 14, 2021, and Plaintiff replied on May 25, 2021. (Doc. # 101; Doc. # 110). Plaintiff also filed a Motion to Amend Scheduling Order on February 2, 2022. (Doc. # 142). For the reasons set forth below, Defendants' Motion for Summary Judgment is granted,

1

and Plaintiff's Motion for Class Certification is denied as moot, and the Motion to Amend Scheduling Order is denied.

## I.   **Background**

FPA Villa Del Lago "owns and operates The Social 2700, a private student housing community in Tallahassee, Florida." (Doc. # 108 at ¶ 2; Doc. # 114 at ¶ 2). Trinity Property manages The Social 2700. (Doc. # 108-5 at ¶ 4). The Social 2700 offers two- and four-bedroom apartments. (Id. at ¶ 7). "Each apartment includes a common area consisting of a kitchen, in-unit washer-dryer and shared living and dining space." (Id. at ¶ 8). "Each individual bedroom is separated from the common areas by a locking door" and includes "a corresponding private bathroom." (Id. at ¶ 9). Although The Social 2700 is marketed entirely to students, "[t]here is no requirement to be an enrolled college or university student . . . to live at The Social 2700." (Doc. # 108 at ¶ 5; Doc. # 114 at ¶ 5; Doc. # 108-6; Doc. # 108-7 at 59:6-9).

On April 27, 2019, Lawrence – a student at Tallahassee Community College – signed a lease at The Social 2700. (Doc. # 108-4 at 12; Doc. # 69 at ¶ 37). The lease agreement includes various provisions related to termination of the lease and the use of amenities. (Doc. # 108-4 at 12-20, 32-34). Of note, the lease agreement provides that Lawrence would not be

2

released from his rental payment obligations for voluntarily or involuntarily leaving school, that Lawrence would be obligated to continue to pay all rent if he moved out early and until his apartment was re-leased, and that The Social 2700 maintains the discretion to close its amenities. (Id. at 15-16, 32). Lawrence's lease term was set to run from August 20, 2019, through July 31, 2020. (Id. at 13).

In March 2020, "Lawrence returned home to his mother's apartment in Tampa, Florida, for spring break." (Doc. # 108 at ¶ 25; Doc. # 114 at ¶ 25; Doc. # 108-2 at 70:5-7). Because of the rapid spread of COVID-19, Lawrence then decided that he would not return to The Social 2700. (Doc. # 108 at ¶ 27; Doc. # 114 at ¶ 27; Doc. # 108-2 at 70:7-14). Lawrence concedes, however, that he could have stayed at The Social 2700 if he wished to do so. (Doc. # 108-2 at 69:1-4). At the same time, The Social 2700 began closing amenities and transitioning staff to remote work in light of federal and state health recommendations. (Doc. # 108-7 at 62:13-64:25).

Thereafter, on April 26, 2020, "Lawrence vacated his apartment." (Doc. # 108 at ¶ 30; Doc. # 114 at ¶ 30; Doc. # 69 at ¶ 50). According to Lawrence, on that same date, he attempted to return his keys to The Social 2700, but was unable to do so because the office was closed. (Doc. # 69 at

3

¶ 50; Doc. # 114-7 at 51:20-3). At a later date, Lawrence mailed back his keys. (Doc. # 69 at ¶ 51; Doc. # 108-13). Despite his lease agreement, Lawrence "did not pay rent for the months of May, June[,] or July 2020." (Doc. # 108-8).

The Social 2700 began contacting Lawrence regarding his rental payments in early May. First, The Social 2700 sent Lawrence a "friendly reminder" e-mail on May 1, 2020, advising Lawrence that his rent was due that day. (Doc. # 108-10). Next, on May 12, 2020 – after Lawrence's debt was past due – The Social 2700 sent him an e-mail stating: "This is a reminder that you have a balance due on your account of $470.12. Please give the office a call to clear off your balance." (Doc. # 108-11). Three days later, on May 15, 2020, the Social 2700 sent Lawrence a statement listing an outstanding balance of $1,793.86. (Doc. # 108-12 at 2). The statement also notes: "We make any and all efforts to avoid sending your account to a collection agency. However, in the event you are unable to make a timely payment, your account will be forwarded to a collection provider and your credit may be adversely affected." (Id. at 3).

On May 19, 2020, The Social 2700 sent Lawrence another e-mail stating:

Hey Justin,

> Just wanted to make you aware that we received your keys. Unfortunately, we had been trying to contact you in regards to your balance for the last several weeks and were unable to reach you. We walked the unit and notice that your belongings were gone and you had cleaned out your bedroom.
>
> We went ahead and processed your early termination per the lease contract, and did charge you for not returning your keys. We have already done the close out key process on your account/unit and therefore those charges must remain. We hadn't heard from you via phone or e-mail and did not know you would be mailing the keys back.
>
> Please let me know if you have any questions or concerns, you should have received a Final Statement via email on Friday[.]
>
> Thank you!
>
> Cesar Mendez

(Doc. # 108-13). In addition to these e-mails, Lawrence

received a voicemail from The Social 2700 on May 7, 2020:

> Hey Justin, this [is] Seth [] from the Social 2700. Just wanted to give you a quick call regarding your May rent. We haven't received payment for it yet and I just wanted to find when you would make that payment. Also, wanted to let you know that we are running a renewal special right now that could [waive] your May rent. If you want to hear more about that, give us a call back at 850-296-1906. Let us know when you will be able to make that payment.

(Doc. # 114-4).

Lawrence initiated this putative class action against

FPA Multifamily, LLC, on July 2, 2020. (Doc. # 1). Following

several motions to dismiss and amendments to the complaint,

5

FPA Multifamily was replaced with FPA Villa Del Lago and Trinity Property. (Doc. ## 10; 14; 28; 60; 63; 65; 69; 74; 109). The operative third amended complaint includes the following claims: rescission against FPA Villa Del Lago (Count I), unjust enrichment against all Defendants (Count II), and violation of Sections 559.72(7) and 559.72(9) of the Florida Consumer Collection Practices Act ("FCCPA") against all Defendants (Count III). (Doc. # 69). Lawrence also seeks to certify the following class:

> All residents of The Social 2700 Student Spaces who (1) moved out after March 18, 2020, but before the expiration of their lease term, and either (a) paid the costs of rent and fees for the months of March, April, May, June and/or July 2020, or (b) did not pay for these months but were sent debt collection communications from the Defendants.

(Doc. # 90 at 7).

Now, Defendants move for summary judgment. (Doc. # 108). Lawrence has responded (Doc. # 114), and Defendants replied. (Doc. # 115). The Motion is now ripe for review.

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the

6

existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations

or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the Court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his [conclusory] allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. **Analysis**

Defendants seek summary judgment in their favor on all three counts of the third amended complaint.[1] (Doc. # 108 at

---

1. The Court appreciates that Lawrence has alerted the Court that this is not the first motion for summary judgment filed by FPA Villa Del Lago in this case. (Doc. # 114 at 7 n.6). Although the Court does not allow parties to file multiple motions for summary judgment without leave of Court, FPA Villa Del Lago's previous motions were largely filed when the case was assigned to the Honorable Mary S. Scriven, United States District Judge, and prior to this Court notifying the parties of its rules regarding motions for summary judgment. (Doc.## 36; 38; 45; 52). Judge Scriven recused herself on February 22, 2021, and the case was then reassigned to the undersigned. (Doc. ## 46; 47). And, all of these motions were denied as

12). The Court will address each claim in turn.

**A. <u>Rescission</u>**

First, Defendants move for summary judgment in their favor on Count I – Lawrence's claim for rescission against FPA Villa Del Lago – because the claim is overcome by the express terms of the lease agreement. (Doc. # 108 at 15). Lawrence responds that the terms of the lease favor rescission. (Doc. # 114 at 10-16).

To establish a claim for rescission under Florida law, the plaintiff must prove: "(1) the character or relationship of the parties; (2) the making of a contract; (3) the existence of fraud, mutual mistake, false representation, impossibility of performance, or other ground for rescission or cancellation; (4) the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) [if] the moving party has received benefits from the contract, he should further [prove] an offer to restore these benefits to the party furnishing them, if restoration is possible; and (6) the moving party has no adequate remedy at law." <u>Bland v. Freightliner LLC</u>, 206 F. Supp. 2d 1202, 1206 (M.D. Fla. 2002).

---

moot for procedural reasons. (Doc. ## 55; 62). Thus, the Court declines to deny the Motion on this basis.

"Common law rescission is an equitable remedy where the goal is to place the parties in the position that each enjoyed before the contract was executed. . . . This relief is not given as a matter of right; thus, the Court has discretion to allow rescission based on the specifics of each case and in the interest of justice." Amaro v. Certain Underwriters at Lloyd's London, No. 18-23503-Civ-SCOLA/TORRES, 2019 WL 4694149, at *2 (S.D. Fla. July 31, 2019) (citing Billian v. Mobil Corp., 710 So. 2d 984, 990 (Fla. 4th DCA 1998)).

Here, Lawrence bases his request for rescission of the lease on theories of "frustration of purpose" and "impossibility of performance." (Doc. # 69 at ¶ 99). Regarding frustration of purpose, Lawrence contends:

> [Lawrence] executed the contract with FPA Villa Del Lago . . . with the understanding that he would be living in student housing for the purpose of actively attending in-person classes and that FPA Villa Del Lago . . . would provide [Lawrence] with benefits, to include, but not limited to, access to the outdoor pool, TV room, community room, fitness center, jacuzzi and 24 hour computer center with iMacs and PCS and free printing. At the time of the outset of the pandemic and thereafter, [Lawrence] was no longer receiving these benefits and the purposes of the contract was entirely frustrated.

(Id. at ¶ 100). Similarly, regarding impossibility of performance, Lawrence maintains:

> FPA Villa Del Lago . . . [was] obligated to provide [Lawrence] with access to common areas, fitness

>   center, technology center with computer stations,
>   social activities, and other services. However, as
>   a result of the COVID-19 pandemic, school campuses
>   were closed and these common areas and services
>   became both unsafe to provide and unsafe to use.

(Id. at ¶ 102). The Court agrees with FPA Villa Del Lago that Lawrence has failed to show either frustration of purpose or impossibility of performance as to the lease agreement.

"[F]rustration of purpose arises when one of the parties finds that the purposes for which he or she bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration or impossibility of performance by the other party." In re Cinemex USA Real Estate Holdings, Inc., 627 B.R. 693, 697 (Bankr. S.D. Fla. 2021) (citation omitted). "'Impossibility of performance' refers to those factual situations, too numerous to catalog, where the purposes, for which the contract was made, have, on one side, become impossible to perform." Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc., 174 So. 2d 614, 617 (Fla. 2d DCA 1965).

The primary purpose of the lease was to provide Lawrence with accommodations at The Social 2700. (Doc. # 108-4 (evidencing an agreement to rent a bedroom in a shared apartment at The Social 2700)). Nowhere in the lease agreement does it state that the housing was for students only. (Doc.

11

# 108-4). And, Plaintiffs concede "[t]here is no requirement to be an enrolled college or university student in order to live at The Social 2700." (Doc. # 108 at ¶ 5; Doc. # 114 at 5). Further, the lease agreement – which Lawrence agreed to and signed – expressly contemplates a situation where a resident no longer attends school:

> **25. RELEASE OF RESIDENT.** Unless you're entitled to terminate your tenancy under the provisions herein, or by separate addendum, you won't be released from this Lease Contract for any reason – including but not limited to *voluntary or involuntary school withdrawal or transfer*, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, death or property purchase.

(Doc. # 108-4 at 16 (emphasis added)). This counters Lawrence's contention that the purpose of the lease was to provide housing for students. Thus, even viewing the facts in the light most favorable to Lawrence, no reasonable juror could conclude that the purpose of the lease was frustrated when Lawrence chose to move in with his mother after his classes shifted to remote learning. (Doc. # 108-2 at 69:1-4).

Nor was the purpose of the lease frustrated when The Social 2700 closed or limited access to its amenities in light of the COVID-19 pandemic. Indeed, the lease agreement provides that these facilities are not a "contractual right"

and that The Social 2700 could close such amenities:

> **GENERAL CONDITIONS FOR USE OF DWELLING PROPERTY AND RECREATIONAL FACILITIES.** Resident(s) permission for use of all common areas, Resident amenities, and recreational facilities (together, "Amenities") located at the Dwelling Community is a privilege and license granted by Owner, and not a contractual right except as otherwise provided for in the Lease. . . . [S]uch permission may be revoked by Owner at any time for any lawful reason. . . . *Owner reserves the right* to set the days and hours of use for all Amenities and to change the character or *close any Amenity based upon the needs of Owner and in Owner's sole and absolute discretion, without notice, obligation or recompense of any nature to Resident.* Owner and management may make changes to the Rules for use of any Amenity at any time.

(Doc. # 108-4 at 32 (emphases added)). Despite not being able to use the fitness center, pool, and other amenities, Lawrence still had access to his apartment. (Doc. # 108 at ¶¶ 26, 28; Doc. # 114 at ¶¶ 26, 28). Indeed, Lawrence admits he could have continued to live at The Social 2700 but chose not to. (Doc. # 108-2 at 69:1-4 ("Q. You could have stayed at The Social 2700 if you wanted to, right? A. Yeah, if I desired, I could have. I could have stayed in my apartment.")).

Importantly, Lawrence does not argue that the Social 2700 acted unreasonably or unlawfully in closing the amenities. To the contrary, Lawrence agrees that these common areas should have been closed because of COVID-19. (Doc. # 108-2 at 60:1-7 ("Q. Okay. So, you believe [the common areas]

should have been closed down? A. Yes.")). Thus, even viewing the facts in the light most favorable to Lawrence, no reasonable juror could conclude that the purpose of the lease was frustrated when The Social 2700 closed or limited access to its amenities because of COVID-19.

Accordingly, Count I is dismissed to the extent it seeks rescission based on frustration of purpose. See Gap Inc. v. Ponte Gadea N.Y. LLC, 524 F. Supp. 3d 224, 235 (S.D.N.Y. 2021) ("While undeniably unfortunate, the COVID-19 pandemic has not amounted to a frustration of the Lease's purpose of Gap operating a retail business at the Premises. Instead, the evidence suggests that Gap has made a business decision to close its stores[.]").

For the same reasons, Count I also fails insofar as it is based on impossibility of performance. This is not a situation where Lawrence could not reside at The Social 2700 or Defendants were prohibited from operating the apartment complex. (Doc. # 108 at ¶¶ 27-28; Doc. # 114 at ¶¶ 27-28; Doc. # 108-2 at 69:1-4). And, under the terms of the lease, an "epidemic" was anticipated by the parties. Indeed, the lease includes the following force majeure clause:

> **FORCE MAJEURE:** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, *epidemics*, war, acts of terrorism,

> riots, flood, fire, hurricane, tornado, sabotage,
> *or other occurrence which is beyond the control of*
> *the parties*, then we shall be excused from any
> further performance of obligations and undertakings
> hereunder, to the full extent allowed under
> applicable law.

(Doc. # 108-4 at 19 (emphases added)). Lawrence concedes that

COVID-19 represents an "epidemic." (Doc. # 108 at ¶ 37; Doc.

# 114 at ¶ 37; Doc. # 108-2 at 18:5-6). And, the fact that

Lawrence was unable to give adequate notice prior to vacating

his apartment or find a new tenant due to the COVID-19

pandemic does not support rescission of the entire contract.

(Doc. # 114 at 11). In any event, Lawrence provides no factual

support for his allegation that he was unable to find a

replacement tenant. (Doc. ## 69; 114).

Accordingly, the Motion is granted as to Count I to the

extent it is based on impossibility of performance as well.

See <u>Gap</u>, 524 F. Supp. 3d at 238 (rejecting a similar

impossibility of performance argument).

**B. <u>Unjust Enrichment</u>**

Next, Defendants move for summary judgment on Count II

– Lawrence's claim for unjust enrichment against all

Defendants – because "there is an adequate legal remedy

provided by the [l]ease and there is no evidence that Trinity

'unjustly' obtained rent payments from [Lawrence]." (Doc. #

108 at 21). Lawrence responds that "unjust enrichment does not fail due to the lease agreement. (Doc. # 114 at 16).

To establish a claim for unjust enrichment under Florida law, the plaintiff must prove: (1) the "plaintiff has conferred a benefit on the defendant, who has knowledge thereof," (2) the "defendant voluntarily accepts and retains the benefit," and (3) "the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." Rosado v. Barry Univ., Inc., 499 F. Supp. 3d 1152, 1159 (S.D. Fla. 2020) (quoting Duty Free World, Inc. v. Mia. Perfume Junction, Inc., 253 So. 3d 689, 693 (Fla. 3d DCA 2018)).

"No cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract. This is because the theory of unjust enrichment is equitable in nature and is, therefore, not available when there is an adequate legal remedy." Zarella v. Pac. Life Ins. CO., 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010). "However, this rule does not apply where one of the parties asserts that the contract governing the dispute is invalid." Am. Infoage, LLC v. Regions Bank, No. 8:13-cv-1533-SDM-TGW, 2014 WL 4794748, at *6 (M.D. Fla. Sept. 25, 2014) (citation omitted).

In a previous motion, Defendants sought dismissal of

16

Count II on the basis that the lease agreement governed the parties' dispute. (Doc. # 94 at 8-12). However, the Court declined to dismiss the claim on this basis because Lawrence "allege[d] that the lease [was] invalid by virtue of his rescission" and the Court had found that his rescission claim was adequately pled. (Doc. # 109 at 8-9). Still, the Court cautioned it was "not convinced that Lawrence [could] rely on such rescission to allege that the lease agreement was invalid." (Id. at 8). And, the Court has now determined that Lawrence's claim for rescission against FPA Villa Del Lago fails as a matter of law. Thus, the Motion is granted as to Count II to the extent it is asserted against FPA Villa Del Lago. See Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co., 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011) (dismissing an unjust enrichment claim where there was an express, valid contract).

In response to the Motion, Lawrence appears to argue that his claim for unjust enrichment is viable as to Trinity Property because it is not a party to the lease agreement. (Doc. # 114 at 16). However, Lawrence cites to no record evidence showing that any benefit was conferred to Trinity Property – as opposed to FPA Villa Del Lago. (Id.; Doc. # 69). And the Court finds that it would not be inequitable for

Trinity Property to retain rental payments pursuant to a valid lease under these circumstances – in that Lawrence voluntarily moved out of The Social 2700 and admitted that he could have continued to reside there. (Doc. # 108 at ¶¶ 25, 28; Doc. # 114 at ¶¶ 25, 28; Doc. # 108-2 at 69:1-4).

In any case, the lease agreement expressly noted that Lawrence would be responsible for such payments. (Doc. # 108-4 at 14-15 ("Unless modified by an addendum, if you . . . move out without paying rent in full for the entire Lease term or renewal period . . . [y]ou will be liable for all rent owed at the time and as it becomes due under the terms of your lease agreement until the Apartment is re-rented.")). Thus, Count II fails as a matter of law as to Trinity Property as well. See Kennedy v. Deschenes, No. 17-60110-Civ-SCOLA, 2017 WL 2223050, at *8 (S.D. Fla. May 19, 2017) ("Since both the $8,000 down payment and the rent were paid pursuant to the terms of the contract, the factual allegations . . . cannot support a claim for unjust enrichment.").

### C. **Florida Consumer Collection Practices Act**

Next, Defendants move for summary judgment on Count III – Lawrence's claim for violations of Sections 559.72(7) and (9) of the FCCPA against all Defendants. (Doc. # 108 at 21). The Court will address each section of the FCCPA in turn.

### 1. **Section 559.72(7)**

Defendants argue that Lawrence's claim for violations of Section 559.72(7) of the FCCPA fails because "the communications identified by [] Lawrence . . . occur almost exclusively during the month of May 2020 and are made up of communications informing [him] of his debt." (Doc. # 108 at 23). Defendants further maintain that Lawrence's "testimony that he was allegedly 'stressed' but not actually affected in any material way by these otherwise authorized communications establishes that [he] has no basis for this claim." (Id.). Lawrence responds that a jury could conclude that these communications "were harassing in frequency given they were for rent at the height of COVID." (Doc. # 114 at 19).

Section 559.72(7) prohibits persons from "[w]illfully communicat[ing] with the debtor . . . with such frequency as can reasonably be expected to harass the debtor[,] . . . or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor." Fla. Stat. § 559.72(7) (2020). "[T]he statute's use of the word 'willful' means that the calls must be done consciously, and thus that the statute concerns both 'the purpose as well as the frequency of the creditor's calls.'" Harrington v. Roundpoint Mortg. Servicing Corp., No. 2:15-cv-322-SPC-MRM, 2017 WL

19

1378539, at *10 (M.D. Fla. Apr. 11, 2017) (citing Story v. J.
M. Fields, Inc., 343 So. 2d 675, 677 (Fla. 1st DCA 1977)).

    Here, Lawrence alleges that Defendants made fourteen[2]
harassing debt collection communications, although he only
provides factual support for five of them. (Doc. # 114 at 19;
Doc. # 114-7). Four of those communications occurred via e-
mail between May 1 and May 17, 2020. (Doc. ## 108-10; 108-
11; 108-12; 108-13). Additionally, a voicemail was left for
him on May 7, 2020. (Doc. # 114-4). Lawrence alleges that at
least four other "harassing" calls were made to him regarding
his past due rent. (Doc. # 114 at 19; Doc. # 114-7 at  ¶ 13;
Doc. # 69 at ¶ 58). One of these calls allegedly occurred on
July 16, 2020. (Doc. # 69 at ¶ 58). The only information
provided as to this call is that Defendants "ask[ed] for
payment of the outstanding rent and charges due." (Id.).
However, these statements are conclusory, and do not provide
any evidence from which a reasonable juror could determine
that these additional calls were harassing.

    And the five e-mails and single voicemail that have been
provided appear pleasant (or neutral at worst) and simply

--------

2. At his deposition, Lawrence stated that he was contacted
by The Social 2700 regarding his debt "[b]etween five and ten
times" – not fourteen times. (Doc. # 108-2 at 118:1-4).

remind Lawrence of the past due rent. Indeed, no reasonable juror could conclude that these communications included harassing language, or that they were so frequent that they could be considered harassing. See Schauer v. Morse Operations, Inc., 5 So. 3d 2, 5 (Fla. 5th DCA 2009) ("The present case does not come close to Story in terms of egregious conduct, in that there were, at most, only seven telephone calls, and only one in which there was anything which could be termed a threat. Although plaintiff's wife testified that these calls were upsetting to her, her worries were not attributable to anything wrong that GMAC said to her, but rather her own concern about their ability to pay the loan."). The Court disagrees with Lawrence that the existence of COVID-19 alters this calculus. (Doc. # 114 at 19). And Lawrence testified that although he was stressed by these calls, they did not have "a direct impact on how [he] was living [his] life." (Doc. # 108-2 at 120:16-20).

Accordingly, the Motion is granted as to Count III to the extent it seeks relief under Section 559.72(9) of the FCCPA. See Daley v Bono, 420 F. Supp. 3d 1247, 1260-61 (M.D. Fla. 2019) ("Those letters . . . 'did not use abusive language, did not threaten [the plaintiff], and did not contact [her] friends, co-workers or family members.' . . .

In sum, the Medical Defendants' statements are insufficiently frequent or harassing [so] as to establish a claim under [S]ection 559.72(7)." (internal citations omitted)).

### 2. **Section 559.72(9)**

Finally, Defendants argue that Lawrence's claim for violations of Section 559.72(9) of the FCCPA fails because Lawrence "agree[d] that he owes money under the terms of the Lease. . . . And given the legitimacy of the debt under the terms of the lease, [Defendants'] attempts to collect the same in line with paragraphs 35 and 36 of the Lease were proper." (Doc. # 108 at 23). Lawrence responds that summary judgment is not warranted because "Defendants continued to charge [Lawrence] $150 for failing to return his keys even though it was acknowledged . . . that he did in fact return them and that they were received" and because authorities advised college students "to go home [] and stay there" in light of COVID-19. (Doc. # 114 at 17-18).

Section 559.72(9) of the FCCPA prohibits a person from "claim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person knows that the debt is not legitimate, or assert[ing] the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9). "There are three elements required to state this

claim: (1) an illegitimate debt; (2) a threat or attempt to enforce that debt; and (3) actual knowledge that the debt is illegitimate." Rafer v. Internal Credit Sys., Inc., No. 8:19-cv-1312-WFJ-JSS, 2021 WL 2554048, at *5 (M.D. Fla. June 22, 2021). "A demand for payment upon a legitimate debt will not support a claim under [S]ection 559.72(9)." Locke v. Wells Fargo Home Mortg., No. 10-60286-CIV, 2010 WL 4941456, at *3 (S.D. Fla. Nov. 30, 2010).

Here, Lawrence claims that two of the debts sought by Defendants were illegitimate – the first being the $150 key fee, and the second being Lawrence's past due rent. (Doc. # 114 at 17-18). As to the key fee, there are only two communications in the record in which Defendants could be interpreted as seeking to enforce such debt. First, on May 15, 2020, The Social 2700 sent Lawrence a statement that included a $1,793.86 outstanding balance. (Doc. # 108-12 at 2). That statement noted a $150.00 fee for "Keys (3) & Gate Card." (Id.). Then, on May 19, 2020, The Social 2700 e-mailed Lawrence saying:

> Just wanted to make you aware that we received your keys. Unfortunately, we had been trying to contact you in regards to your balance for the last several weeks and were unable to reach you. We walked the unit and notice that your belongings were gone and you had cleaned out your bedroom.

> We went ahead and processed your early termination
> per the lease contract, and did charge you for not
> returning your keys. We have already done the close
> out key process on your account/unit and therefore
> those charges must remain. We hadn't heard from you
> via phone or e-mail and did not know you would be
> mailing the keys back.

(Doc. # 108-13 at 2).

However, Lawrence cites to no record evidence showing that Defendants knew their attempts to collect the key fee was not legitimate. (Doc. # 114). Indeed, from the evidence provided, the Court can only reasonably infer that Lawrence failed to return his keys prior to terminating his lease early, and that The Social 2700 did not receive the keys from him until weeks after he failed to pay his May rent – sometime in mid- to late-May 2020. (Doc. # 108 at ¶¶ 24, 30; Doc. # 114 at ¶¶ 24, 30; Doc. # 108-13 at 2). The allegation that Lawrence attempted to return the keys on April 26, 2020, but was unable to do so, does not show that Defendants knew the debt was not legitimate. (Doc. # 69 at ¶ 50). And, the Court notes that Lawrence admits he did not further attempt to contact The Social 2700 after he noticed the office was closed. (Doc. # 108-2 at 51:20-52:11). Therefore, Plaintiffs have offered no record evidence from which a reasonable juror could conclude that Defendants knew the $150 key fee was not legitimate.

Regarding the past due rent, Lawrence only cites to the rise of COVID-19 and state recommendations that students return home from college in light of health concerns. (Doc. # 114 at 17-18). However, Lawrence owed Defendants the rent for his entire lease term, until his apartment was re-rented, under the terms of the lease. (Doc. # 108-4 at 15). And again, Lawrence cites to no other record evidence showing that Defendants somehow knew this debt was not legitimate. (Doc. # 114). Thus, Count III fails insofar as it claims Defendants violated Section 559.72(9) as to the past due rent or any other alleged debts. See Rafer, 2021 WL 2554048, at *5 ("The Court holds that these claims fail as a matter of law because the debt is legitimate. The clear terms of the membership contract did not allow Plaintiff to cancel her account prior to the end of the initial twelve-month term.").

**D. Class Certification**

Having found summary judgment appropriate on each of Plaintiff's claims, the Court need not address the issue of class certification. District courts have discretion to consider the merits of a case before deciding whether to certify a class. See Glasser v. Hilton Grand Vacations Co., LLC., 341 F. Supp. 3d 1305, 1314 (M.D. Fla. 2018) (declining to rule on plaintiff's motion for class certification after

finding that defendant was entitled to summary judgment on all claims).

And where the underlying claims lack merit, the district court is within its discretion to deny a motion for class certification as moot. See Telfair v. First Union Mortg. Corp., 216 F.3d 1333, 1343 (11th Cir. 2000) ("With no meritorious claims, certification of those claims as a class action is moot. Because we agree with the bankruptcy and district courts' disposition of the merits of Telfair's claims, we also affirm the denial of the motion for class certification."); see also Rink v. Cheminova, Inc., 400 F.3d 1286, 1297 (11th Cir. 2005) ("Because we have found that summary judgment was properly granted as to the underlying claims of the class representatives, the issue of class certification is moot."). Thus, Plaintiff's Motion for Class Certification is denied as moot.

**E. Motion to Amend Scheduling Order**

As a final matter, Lawrence filed a Motion to Amend Scheduling Order on February 2, 2022. (Doc. # 142). He seeks to re-depose Defendants' corporate representative for information about how Defendants decided to charge other certain fees to other tenants, and he wishes to confirm which debt collector Defendants used to collect those fees. (Id. at

26

2, 17). The Court declines to extend the discovery deadline — which expired on May 7, 2021. (Doc. # 71).

Lawrence suggests that Defendants withheld evidence of debt collecting communications made both to himself and the putative class. (Doc. # 114 at 19 n.13, filed July 1, 2021) ("Defendant appears to be withholding discovery concerning their debt collect ('Smart Pay') who contacted Plaintiff and did not send any correspondence in violation of the FDCPA. Summary judgment could be denied on withholding discovery alone . . . ."). After the parties fully briefed the class certification and summary judgment motions, Plaintiff successfully pursued several motions to compel and for contempt (Doc. # 75, 93, 123, 132, 133, 140). Plaintiff received amended Rule 26 disclosures and volumes of new documents thereafter. (Doc. # 142 at 14).

Yet with those documents now in hand, Plaintiff seeks to have Defendants' corporate representative re-hash the fee and collection issues with respect to the potential class members. (Id. at 2, 16-17) ("[O]ne of the most pivotal issues the Plaintiff has sought to address in this case is the matter of illegal fees and charges that the Defendants collected, or sought to collect, from class members . . . . A deposition is necessary to obtain explanatory information concerning the

thousands of pages . . . produced after the discovery deadline
. . . The deposition should also to [sic] help establish the
veracity or lack thereof concerning the Defendant's rather
implausible claims regarding its lack of knowledge concerning
the identity of the debt collector.").

An extension of the discovery deadline is not warranted
as Plaintiff has not asserted how this information would be
useful in fending off summary judgment against his claims.
See Madura v. BAC Home Loans Servicing L.P., No. 8:11-cv-
2511-VMC-TBM, 2013 WL 3777094, at **24-25 (M.D. Fla. July 17,
2013) (denying motion for continuance where party opposing
summary judgment failed to establish how unavailable facts
created a genuine issue of material fact). As the Court
previously explained, the two fees that Lawrence contends to
have been illegitimate were the unpaid rent and unreturned
key fees. Both claims failed. Further, Plaintiff's request
for further discovery that could benefit the potential class
members is unnecessary since the Court has already found
summary judgment appropriate on each of Lawrence's claims.

Thus, the desire for fee and collection discovery
concerning non-parties does not justify a need for additional
discovery at this juncture. See Burns v. Town of Palm Beach,
999 F.3d 1317, 1334 (11th Cir. 2021) ("[T]he district court

had all the information necessary to rule on the legal issues, and [Burns] raised no genuine question of material fact that would have precluded summary judgment." (internal citations omitted)). The Motion to Amend Scheduling order is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendants FPA Villa Del Lago, LLC, and Trinity Property Consultants, LLC's Motion for Summary Judgment (Doc. # 108) is **GRANTED.**

(2)  Plaintiff's Motion for Class Certification (Doc. # 90) is **DENIED** as moot.

(3)  Plaintiff's Motion to Amend Scheduling Order (Doc. # 142) is **DENIED.**

(4)  The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff Justin Lawrence as to all claims in the third amended complaint. (Doc. # 69).

(5)  The Clerk is directed to terminate any deadlines, deny any outstanding motions as moot, and thereafter, **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>4th</u> day of February, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE